UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICHARD MARTIN,

      Petitioner,

v.                                        CASE NO. 6:05-cv-1815-Orl-31GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

      Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a  response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 11).  Petitioner filed a reply to the response (Doc. No. 39). Subsequently, with leave of the Court, Petitioner filed a supplement to his habeas petition (Doc. No. 44), to which Respondents filed a response (Doc. No. 46).  Petitioner filed a reply and amended reply to Respondents' supplemental response.  (Doc. Nos. 47, 50).

      Petitioner alleges five claims for relief in his habeas petition and supplement to the petition:  (1) trial counsel rendered ineffective assistance by failing to inform him of the expiration date of a plea offer; (2) trial counsel rendered ineffective assistance by failing to

object to or request a hearing concerning the requirement that he wear a stun belt during the trial; (3) the state trial court violated Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights by failing to dismiss the charges against him pursuant to the Interstate Agreement on Detainers ("IAD"); (4) trial counsel rendered ineffective assistance by failing to adequately argue the relevant federal law regarding the application of the IAD at the January 7 and 24, 2002, hearings on Petitioner's motions for discharge; and (5) trial counsel rendered ineffective assistance by failing to adequately research the law regarding the IAD and argue that law at the March 14, 2002, hearing on his motion to dismiss.  For the following reasons, the petition is denied.

## I.    Procedural History

On September 19, 2000, Petitioner, who represented himself to be Kevin Mark Hodges, was charged by information with battery upon a law enforcement officer (count one), resisting an officer with violence (count two), two counts of uttering a forged instrument (counts three and four), and unauthorized use of a driver's license (count five). (App. A at 9.)  On January 24, 2001, Petitioner admitted to the state court that his name is Richard K. Martin.  *Id.* at 17, 18.  As a result, on January 25, 2001, the State filed a motion to revoke or increase Petitioner's bail.  *Id.* at 18, 19.  On January 26, 2001, the trial court conducted a hearing on the motion.  *See* App. G, Jan. 25, 2001, Mot. Hr'g Tr. at 1-6.[1]

---

[1]The Court notes that Respondents failed to consistently and adequately number the pages in several of sections of the appendix. *See, e.g.,* App. G, H, & I.  As a result , citing to the record has proven difficult in this case. ***Respondents are hereby admonished that all future records filed in this Court shall be properly indexed or Bates stamped.***

Petitioner failed to appear at the hearing, and the trial court granted the motion to increase bond and issued a bench warrant.  (App. A at 20, 21.)

On February 26, 2001, Petitioner, who had gone to New Jersey at "the end of January," was detained by federal authorities for violating the terms of his supervised release.  (App. H, July 4, 2001, Rule 3.850 Evidentiary Hr'g Tr. at 39.)  On or about July 6, 2001, the state trial court in Florida received a demand pursuant to the IAD from Petitioner, who was incarcerated in New Jersey.  (App. A at 36-37.)  Subsequently, Petitioner was transferred to the custody of the State of Florida pending resolution of the state charges against him.

On November 22, 2001, Petitioner appeared before the state trial court, which set his "second" arraignment for January 8, 2002.[2]  (App. A at 52.)  On December 10, 2001, the State filed a motion to advance trial date, requesting Petitioner's trial be set for the earliest practical date.  *Id.* at 54.  On December 13, 2001, the Court granted the motion and scheduled the trial for January 7, 2002.[3]  (App. A at 56.)

On December 20, 2001, the State filed an amended information charging Petitioner with battery upon a law enforcement officer (count one), escape (count two), two counts of uttering a forged instrument (counts three and four), and unauthorized use of a driver's

---

[2]The state court minutes from November 22, 2001, indicate that the second arraignment was scheduled for January 8, 2001.  However, given that January 8, 2001, was prior to the November 22, 2001, appearance, it is clear that 2001 was a scrivener's error.

[3]The court minutes from the December 13, 2001, proceedings on the motion to advance trial date reflect that Petitioner was present in the court.  (App. A at 56.)

license (count five).   (App. A at 58-59.)   On January 3, 2002, the State filed a second amended information charging Petitioner with battery upon a law enforcement officer (count one), escape (count two), uttering a forged instrument (count three), and unauthorized use of a driver's license (count four).   (App. A at 62-63.)   On January 7, 2002, Petitioner filed a motion for discharge asserting that the charges against him should be dismissed because he was not brought to trial within 180 days of his demand pursuant to Article III of the IAD.[4]   (App. A at 64-65.)   On the same date, the state trial court denied Petitioner's motion and continued the case based on Petitioner's representation that he did not want to proceed to trial that day.  (App. A at 74.)   On January 9, 2002, Petitioner filed a "motion for discharge for filing a second amended information outside the speedy trial time period," which the state trial court denied on January 24, 2002. (App. A at 75, 77.)   On February 22, 2002, Petitioner, by and through new counsel, filed an amended motion to dismiss pursuant to the IAD.   (App. A at 88-89.)   On March 14, 2002, the state trial court denied the motion.  (App. A at 127.)

After a jury trial on April 22 and 24, 2002, Petitioner was found guilty as charged. (App. C at 297-300.)  On April 25, 2002, the state trial court sentenced Petitioner to a five-year term of imprisonment as to count one, a twenty-year term of imprisonment as to count two,  a ten-year term of imprisonment as to count three, and a ten-year term of imprisonment as to count four.  (App. A at 230-32.)  The trial court ordered the sentences for counts two, three, and four to run concurrent to the sentence for count one and also

_____

[4]The 180-day period purportedly expired on January 2, 2002.

gave Petitioner a credit of 305 days for time served as to all sentences.  Petitioner filed a notice of appeal (App. A at 238), and after counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), Petitioner filed a *pro se* brief.  *See* App. F.  On April 1, 2003, the Fifth District Court of Appeal of Florida *per curiam* affirmed.  (App. F.)

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure.  (App. G.)  On January 22, 2003, the state trial court summarily denied three of Petitioner's claims and ordered the State to respond to the remaining three claims.  On April 20, 2004, Petitioner filed an amendment to his Rule 3.850 motion, adding a seventh claim that trial counsel rendered ineffective assistance by failing to adequately argue the IAD motions.  The state trial court summarily denied claim seven. On July 1 and 9, 2004, the state trial court held an evidentiary hearing as to claims one, two, and three, after which it denied relief.  (App. G at 213-15; App. H.)  Petitioner appealed, and the appellate court *per curiam* affirmed.  (App. I.)

## II.    *Legal Standards*

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

    (1)       resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)       resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

6

B.    **Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[5]  *Id.* at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

---

[5]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III.     *Analysis*

    A.     *Claim One*

Petitioner asserts that his first appointed counsel[6] rendered ineffective assistance by failing to advise him of the February 23, 2001, expiration date of the State's ten-year plea offer.  In support of this claim, he states that although counsel informed him of the offer, he was not told the offer had an expiration date until after it had expired.  Petitioner contends that had he known of the expiration date of the plea offer, he would have accepted it as evidenced by his requests to the state court to take the ten-year plea offer.

The state trial court conducted an evidentiary hearing on this claim after which it denied relief.  In denying relief, the court noted that Petitioner's first appointed counsel likely did not advise Petitioner of the plea offer's expiration date.  *See* App G., Oct. 13, 2004, Order Den. Def.'s Mot. for Post-Conviction Relief at 2.  The state court determined, however, that the evidence presented at the evidentiary hearing "show[ed] that . . .

---

[6]During his state trial proceedings, Petitioner was represented at various times by three attorneys.  The first attorney represented Petitioner through approximately April of 2001.  This time period included the period in which Petitioner left the State of Florida and was taken into custody in New Jersey.  A second attorney was appointed to Petitioner's case in approximately April of 2001, and he represented Petitioner through approximately January 24, 2002.  Thereafter, at Petitioner's request, a third attorney was appointed to represent him at trial.

[Petitioner] would not have accepted [the] ten year plea offer, regardless of an expiration date." *Id*. The court further found that Petitioner had very little credibility. *Id.* In making this determination, the state court noted that Petitioner lied about his identity throughout the initial phase of the criminal proceedings, subsequently fled the jurisdiction after his identity was discovered, and was ultimately arrested in New Jersey. *Id.* Based on the evidence, the state court concluded that Petitioner failed to establish that he received ineffective assistance of counsel. *Id.*

When a defendant challenges the entry of a not-guilty plea based on ineffective assistance of counsel, he "'must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial.'" *Guerra v. Secretary For Dept. of Corrections*, 2008 WL 821063, *2 (11th Cir. 2008) (quoting *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995)); *see also Carson v. Thompson*, 230 Fed. Appx. 890, 891 (11th Cir. 2007). Furthermore, when considering such claims, a federal court must presume that the state court's factual findings as to credibility determinations are correct absent clear and convincing evidence to the contrary. *See Guerra*, 2008 WL 821063 at *1 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

In the instant case, the following occurred in Petitioner's state trial proceedings. On January 24, 2001, Petitioner, who was charged in September of 2000, admitted his true identity to the state trial court. (App. G, Jan. 24, 2001, Hr'g on Mot. to Continue Tr., State's Ex. 3 at 2-4.) On January 25, 2001, the State conveyed by letter to Petitioner's first appointed defense counsel a ten-year plea offer, which had an expiration date of February

23, 2001.  (App. G, State's Ex. 2.)  On that same day at a bond revocation hearing, defense counsel told the state trial court that he had spoken with Petitioner who said he could not attend the hearing.  (App. G, Jan. 25, 2001, Hr'g Tr., State's Ex. 4 at 1-3.)  The trial court rescheduled the hearing to January 26, 2001, and directed defense counsel to notify Petitioner that he should be at the hearing.  *Id.* at 3, 5-6.  Pursuant to the court minutes of the January 26th hearing, when Petitioner failed to appear, defense counsel informed the trial court that he had advised him of the hearing.  The state court subsequently increased Petitioner's bond and issued a bench warrant for his arrest.  (App. G, Jan. 26, 2001, Ct. Min., State's Ex. 5.)  Thereafter, Petitioner left Florida and returned to New Jersey where he was detained on approximately February 26, 2001, for violating the terms of his federal supervised release.  (App. G, State's Ex. 6; App. B, Jan. 7, 2002, Hr'g Tr. at 5-6. )

On March 5, 2001, Petitioner left his Florida defense counsel a message, notifying him that he was in jail in New Jersey, requesting to know what was happening in his case, and asking counsel to send discovery to him at the jail.  (App. G, State's Ex. 7.)  On March 20, 2001, defense counsel sent Petitioner a letter stating,

> When we last spoke; [sic] prior to your failing to appear for the State's motion to revoke your bond which was held on January 25, 2001, I had informed you that the State was offering a sentence of ten years as a habitual felony offender. At that time the State also threatened that if you did not accept the offer by February 23, 2001, then they would file an additional charge of escape, which carries a maximum sentence of 30 years as a habitual felony offender.  At this time, I have not received an amended information from the State, [sic] it is my understanding that they are waiting for your return to address the issue.

As for your request for discovery, please send me a written request. . . .

(App. G, State's Ex. 8.) On January 6, 2002, pursuant to defense counsel's notes, Petitioner told his attorney that he would "take six years." (App. G, State's Ex. 9.) On January 7, 2002, Petitioner asked the trial court if he could take the State's ten-year plea offer because he did not know prior to December of 2001 that the offer had an expiration date. (App. B, Jan. 7, 2002, Hr'g Tr. at 5-9, 13, 19, 20.) In response, the state trial court offered him a fifteen-year plea, which he rejected.

At the Rule 3.850 evidentiary hearing, Petitioner's first appointed defense counsel testified that he did not recall whether he told Petitioner that the ten-year plea offer expired on February 23, 2001. (App. H, July 9, 2004, Rule 3.850 Evidentiary Hr'g Tr. at 10.) Petitioner testified that counsel told him about the plea offer before the January 26, 2001, bond revocation hearing, but did not tell him the offer had an expiration date. (App. H, July 1, 2004, Rule 3.850 Evidentiary Hr'g Tr. at 19-20.) Petitioner asserted that he would have taken the ten-year plea offer if he had known of the expiration date. *Id.* at 20-21, 25.

This Court concludes that Petitioner has failed to demonstrate that the state court's determination was contrary to, or an unreasonable application of, clearly established federal law or that it was unreasonable in light of the evidence presented. In denying this claim, the state court made a factual determination that Petitioner was not credible. This finding is amply supported by the record. For instance, on January 7, 2002, Petitioner told the trial court that he was not told about the ten-year plea offer until December of 2001. (App. B, Jan. 7, 2002, Hr'g Tr. at 5-9, 13, 19, 20.) Petitioner subsequently stated that he was

11

told about the offer by his first defense attorney after being taken into federal custody

(February of 2001). *Id.* at 20-21. However, in contradiction to his previous representations

to the trial court, Petitioner testified at the Rule 3.850 evidentiary hearing that his attorney

informed him of the plea offer prior to the January 26, 2001, bond revocation hearing.

(App. H, July 1, 2004, Rule 3.850 Evidentiary Hr'g Tr. at 19-20.)  Furthermore, evidence

presented at the Rule 3.850 hearing demonstrates that on January 6, 2002, long after the ten-

year plea offer expired, Petitioner was seeking a six-year plea offer.

Petitioner has failed to prove by clear and convincing evidence that the state court's

factual findings are incorrect.  Accordingly, this Court cannot conclude that the state

court's finding that Petitioner failed to show that a reasonable probability exists that had

he been advised of the plea offer's expiration date, he would have taken the offer and

would not have proceeded to trial, is unreasonable.  Accordingly, this claim is denied

pursuant to § 2254(d).

**B.**     ***Claim Two***

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object

to or request a hearing concerning the requirement that he wear a stun belt during the trial.

In support of this claim, Petitioner maintains that wearing the stun belt prevented him

from fully participating in his own defense because it impaired his ability to confer with

counsel, was physically painful, and made him fearful of being electrocuted.  He further

asserts that wearing the stun belt prejudiced his defense because it could be seen under his

clothing.  Petitioner contends that he told trial counsel that he did not want to wear the belt and the he wanted him to object to the use of the device.  (Doc. No. 44 at 2.)

Petitioner raised this claim in his Rule 3.850 motion.  The state trial court held an evidentiary hearing on the claim and denied relief.  The state court found that Petitioner's assertion that the stun belt prevented him from fully participating in his trial was refuted by his counsel's testimony that he "was very participatory during trial."  (App G, Oct. 13, 2004, Order Den. Def.'s Motion for Post-Conviction Relief at 1.)  The state court further noted that Petitioner "spoke with counsel and suggested questions and strategies for counsel to pursue."  *Id.*  In conclusion, the court determined that Petitioner failed to establish that he was prejudiced by the use of the stun belt during trial.  *Id.*  The appellate court *per curiam* affirmed the trial court's ruling.

"It is possible for the security measures taken by a trial court to be sufficiently unfairly prejudicial to a criminal defendant as to cause a due process violation."  *United States v. Cunningham*, 194 Fed. Appx. 582, 585 (11th Cir. 2006) (citing *Holbrook v. Flynn*, 475 U.S. 560 (1986)).  The Eleventh Circuit Court of Appeals has held that stun belts may have "an adverse impact on a defendant's Sixth Amendment and due process rights to be present at trial and to participate in his defense."  *United States v. Durham*  287 F.3d 1297, 1305-06 (11th Cir. 2002); *see also Rameses v. Kernan*, Case No. S-04-1173-GEB-GGH-P,  2007 WL 4200814, *9 (E.D. Cal. Nov. 27, 2007) (addressing ineffective assistance of counsel claim related to use of stun belt at trial); *Stevens v. McBride*, 492 F. Supp. 2d 928, 948-49 (N.D. Ind.

2005) (same), *vacated in part on other grounds by Stevens v. McBride,* 489 F.3d 883 (7th Cir.

2007).  As such,

> [i]f a stun belt is to be used to restrain a particular defendant, a court must subject that decision to careful scrutiny.  This scrutiny should include addressing factual questions related to its operation, the exploration of alternative, less problematic methods of restraint, and a finding that the device is necessary in that particular case for a set of reasons that can be articulated on the record.

*Durham,*  287 F.3d at 1309.

In the instant case, trial counsel did not object to the use of a stun belt or request a

hearing on the issue.  Moreover, there is no indication that the state trial court conducted

a hearing or made the requisite factual determination described in *Durham*.  However,

Petitioner has not established by clear and convincing evidence that the state courts' factual

determination that he did not suffer prejudice as a result of wearing the stun belt was an

unreasonable determination of the facts in light of the evidence presented.

At the evidentiary hearing, trial counsel recalled that Petitioner questioned him

about why he had to wear the stun belt and that Petitioner was not "thrilled" about it.

(App. H, July 1, 2004, Rule 3.850 Evidentiary Hr'g Tr. at 67.)  However, counsel indicated

that the device could not be seen by the jury.  *Id.* at 67-69.  Additionally, trial counsel

testified that Petitioner was very involved in the trial and communicated with him

throughout the trial.  *Id.* at 72-75.  Trial counsel stated that he did not recall Petitioner ever

telling him that the stun belt affected his decision not to testify.  *Id.* at 75. Moreover, during

the trial, when asked by the court, Petitioner affirmed that he chose not to testify, and he did not indicate that his decision was based on the stun belt.  (App. C. at 235.)

The record demonstrates that Petitioner asked the trial court questions and expressed his thoughts and concerns throughout the trial.  Further, the evidence indicates that the stun belt could not be seen by the jury.  Finally, the jury heard overwhelming testimony evidencing Petitioner's guilt.  Petitioner has offered only conclusory allegations that the stun belt prohibited his participation at trial.  He does not offer any evidence of how he would have more fully participated in the trial had he not been required to wear the stun belt or how his participation would have resulted in a different outcome.  In sum, Petitioner has not established that he was prejudiced by counsel's failure to object to or request a hearing regarding the stun belt.  Accordingly, claim two is denied pursuant to § 2254(d).

### C.    Claims Three, Four, and Five

Claims three, four, and five pertain to the application of the IAD to Petitioner's case. Accordingly, the Court will consider these claims in tandem.

First, Petitioner contends that the state court violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by failing to dismiss the charges against him based on the IAD.  Petitioner asserts that pursuant to Article III of the IAD,[7] the state court was required

---

[7]Article III of the IAD provides in relevant part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment

to dismiss the charges against him when he was not brought to trial by January 2, 2002. Petitioner filed two motions to discharge/dismiss the charges against him, and both motions were denied pursuant to *Vining v. State*, 637 So. 2d 921 (Fla. 1994). Petitioner raised the issue on direct appeal, and the appellate court *per curiam* affirmed.

"Article III(a) requires that a prisoner, against whom a detainer has been lodged, shall be tried within 180 days of the prosecuting state's receipt of the prisoner's notice requesting speedy disposition of the charges." *Taylor v. Dormire*, Case No. 4:06-cv-426-JCH, 2007 WL 1063534, *3 (E.D. Mo. April 9, 2007) (citing 18 U.S.C. App. § 2). The interpretation of the IAD is a matter of federal law. *Cuyler v. Adams*, 449 U.S. 433, 438 (1981).

---

> there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: Provided, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

18 U.S.C. App. 2, § 2, Art. III(a) (2000).

16

The United States Supreme Court has held that a violation of the IAD is a cognizable habeas claim when it creates a "fundamental defect."   *Reed v. Farley*, 512 U.S. 339, 352 (1994).   In *Hill v. United States*, 368 U.S. 424 (1962), the Court explained that "a fundamental defect [is one] which inherently results in a complete miscarriage of justice or an omission inconsistent with rudimentary demands of fair procedure."  *Hill*, 368 U.S. at 428.  Consistent with *Hill*, the Eleventh Circuit has held that "a violation of Article III(a) of the [IAD] will support no post-conviction relief pursuant to 28 U.S.C. [§] 2254 when petitioner alleges no facts casting substantial doubt on the state trial's reliability on the question of guilt." *Seymore v. State of Ala.*,  846 F.2d 1355, 1357 (11th Cir. 1988).  Similarly, in *Reed*, a majority of the Court determined that a violation of Article IV(c) of the IAD, which requires the trial to begin within 120 days of the prisoner's arrival in the state, was not cognizable pursuant to § 2254 because the petitioner failed to object to the trial date when it was set and suffered no prejudice from the delay.  *Id.* at 353-54.  Additionally, in *New York v. Hill*, 528 U.S. 110, 110-11 (2000), the United States Supreme Court held that agreeing to a trial date beyond the 180-day period constitutes a waiver of the defendant's IAD rights.  *See also id.* at 118 (noting that allowing the defendant or his attorney to agree to a trial date outside the 180-day period but later seek to dismiss the charges based on a violation of the IAD "would enable defendants to escape justice . . . ."); *but see Alabama v. Bozeman*, 533 U.S. 146 (2001) (holding on petition for writ of certiorari from direct appeal of state criminal proceeding that the language of the anti-shuttling provision of Article IV(e) of the IAD is absolute and even a *de minimis* violation requires dismissal of the charges).

17

In the instant case, the record indicates that on December 7, 2001, the State filed a motion to advance the trial date to the earliest practical date.  (App. A at 54, 55.)  On December 13, 2001, a hearing was held on the motion at which Petitioner was present.  *Id.* at 56.  At that time, the state court set the trial for January 7, 2002.  *Id.*  Petitioner does not assert nor does the record indicate that he objected to the January 7, 2002, trial date.  However, after the 180-day period expired, on January 7, 2002, defense counsel filed the first motion for discharge pursuant to the IAD.  *Id.* at 64-65.  On that date, the trial court held a hearing on the motion and denied it, at which time Petitioner told the court he did not wish to proceed to trial that day.  (App. B at 101-02, 108-22.)

Based on the foregoing, the Court concludes that Petitioner waived his right to trial within the 180-day period required by Article III(a) of the IAD when he agreed to the January 7, 2002, trial date.  Additionally, Petitioner has failed to show how the alleged IAD violation rises to the level of a fundamental defect which would require dismissal of the charges.  The alleged IAD violation did not prevent Petitioner from receiving a fair trial, nor based on the evidence presented at trial, is it probable that the alleged violation resulted in the conviction and imprisonment of an innocent person.  Petitioner has not presented any evidence casting any doubt on the state trial proceeding's reliability as to the issue of guilt.  Consequently, Petitioner has failed to demonstrate that he suffered prejudice in defending himself.  Accordingly, claim three is denied.[8]

---

[8]To the extent Petitioner alleges that the state court violated his Sixth Amendment right to a speedy trial, the claim is likewise denied.  In *Barker v. Wingo*, 407 U.S. 514, 530
(continued...)

---

[8](...continued)

(1972), the United States Supreme Court held that four factors must be balanced when determining whether the defendant's constitutional right to speedy trial has been violated: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  Balancing these factors, the Court concludes that Petitioner has not demonstrated a violation of his constitutional right to speedy trial.

The length of delay in this case was from July 6, 2001, when the state court received Petitioner's IAD request, until April 22, 2002, when his trial began.  The delay was less than a year and cannot be said to be presumptively prejudicial.  *See Hall v. McDonough*, Case No. 5:06-cv-30-RS-MD, 2007 WL 4247652, *24 (N.D. Fla. Dec. 3, 2007) ("[A] one-year period has been recognized as the amount of time necessary to require a speedy trial analysis.").

With respect to the second factor, there is no indication that the reason for the delay was to hamper the defense.  Instead, it appears that the initial reason for the delay of Petitioner's trial was the prosecution's and trial court's negligence in calculating the expiration of the 180-day IAD period.  However, from the record it appears that Petitioner was not prepared to proceed to trial until approximately March of 2002.  This factor, therefore, weighs slightly in Petitioner's favor.

Likewise, the third factor weighs somewhat in favor of Petitioner.  He asserted his right to speedy trial when he filed his request pursuant to Article III of the IAD.  However, as noted previously, there is no indication from the record that Petitioner objected to the January 7, 2002, trial date when it was initially scheduled.  Moreover, the State sought to advance the trial date and was prepared to proceed to trial on January 7, 2002, but Petitioner chose not to do so.

As to the fourth factor, "because petitioner has not established that the first three *Barker* factors weigh heavily against the government, he must establish that he suffered actual prejudice from the delay in his trial."  *Id.* at *25 (citing *United States v. Davenport*, 935 F.2d 1223, 1239 (11th Cir. 1991)).  To determine whether petitioner suffered prejudice, three interests must be considered: "(1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired."  *Barker*, 407 U.S. at 532.  Of these, the third is the most important, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  *Id.*  Moreover, "[i]n the absence of a showing that he suffered some particular injury, such as lost evidence or prolonged pretrial incarceration, '[the court] must presume that [the petitioner] relies on the anxiety inherent in any delay.  Standing alone, however, this form of prejudice is insufficient to warrant reversal.'"  *United States v. Varella*,

(continued...)

In claim four, Petitioner asserts that trial counsel rendered ineffective assistance by failing to adequately argue the state court's disregard of the mandatory language of the IAD at the January 7, 2002, hearing on his first motion for discharge and at the January 24, 2002, hearing on his "motion for discharge for filing a second amended information." *See* Doc. No. 44 at 7, 9. Petitioner maintains that counsel did not argue the relevant federal law and had counsel done so, then a reasonable probability existed that the state trial court would have dismissed the charges against him. *Id.* at 7-12. Similarly, in claim five, Petitioner asserts trial counsel rendered ineffective assistance by failing to adequately research and present relevant law regarding the application of the IAD at the March 14, 2002, hearing on his amended motion to dismiss. *Id.* at 12-20.

Respondents assert that these claims are procedurally barred from review by this Court. *See* Doc. No. 46 at 2-3. The federal court must dismiss those claims or portions of claims that either (1) have been explicitly ruled procedurally barred by the highest state

---

[8](...continued)
692 F.2d 1352, 1359 (11th Cir. 1982) (quoting *United States v. Hill*, 622 F.2d 900, 910 (5th Cir. 1980)).

In this case, Petitioner has not alleged any specific prejudice from the delay. Furthermore, there is no indication that the delay impaired his defense in any manner. Therefore, a finding of actual prejudice is not supported.

In sum, weighing the four factors, the Court concludes that Petitioner has not demonstrated a violation of his constitutional right to speedy trial. Finally, to the extent Petitioner's claim of speedy trial or IAD violation is premised on any basis not specifically discussed herein, the claim is without merit and is denied.

court considering the claims,[9] or (2) are not exhausted but would clearly be barred if returned to state court.[10]  Thus, "[f]ederal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law.  In addition, federal courts may not address claims that have not been presented in the state court if the state court would have found the claims to be procedurally defaulted . . . ."  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).[11]

Petitioner raised claims four and five in his Rule 3.850 motion.  *See* App. G.  The state trial court denied the claims because they "either [were] or should have been raised in [Petitioner's] direct appeal, and [they] cannot be relitigated by the filing of a motion under . . . [Rule] 3.850."  *Id.*  Thus, the state court determined that these claims were procedurally barred.

Furthermore, although Petitioner raised claims four and five in his Rule 3.850 motion, he did not appeal the state trial court's denial of those claims.  Instead, Petitioner

---

[9]*Harris v. Reed*, 489 U.S. 255 (1989).

[10]*See, e.g., Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990) ("[w]hen a claim is never presented to the state court *Teague* does not require that the last state court rendering judgment 'clearly and expressly' state that its judgment rests on a procedural bar.").

[11]Also, if the petitioner attempts to raise the claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

filed an appellate brief asserting that the state trial court erred by denying his claims of ineffective assistance of counsel in relation to the ten-year plea offer and the use of a stun belt. *See* App. H.

The failure to appeal the denial of post-conviction relief results in a procedural default. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (exhaustion requires not only the filing of a Rule 3.850 motion, but also an appeal of its denial); *see also Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991); *Smith v. Jones*, 923 F.2d 588 (8th Cir. 1991) (claims presented in post-conviction motion and not appealed were procedurally barred in subsequent habeas proceedings). The Eleventh Circuit has held that if the defendant in a Florida post-conviction proceeding "received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver." *Cortes v. Gladish*, 2007 WL 412484, *2 (11th Cir. 2007).

As noted previously, an evidentiary hearing was conducted on Petitioner's Rule 3.850 motion. Thus, any claims not addressed in Petitioner's Rule 3.850 appellate brief were waived. As noted previously, claims four and five were not raised in his appellate brief. Thus, because the state court found these claims to be procedurally barred and Petitioner failed to raise the denial of the claims in his appellate brief, they are procedurally barred absent the application of an exception to the bar.

There are two exceptions to the procedural default bar. First, a petitioner may overcome a procedural default by showing "both 'cause' for the default and actual 'prejudice' resulting from the default." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir.

2003). The second exception, known as the "fundamental miscarriage of justice" exception, only "occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.* In the present case, Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the fundamental miscarriage of justice exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, claims four and five are procedurally barred.[12]

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Richard Martin is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court is directed to enter judgment accordingly and close this case.

---

[12]Alternatively, the Court notes that these claims are without merit. The record indicates that defense counsel repeatedly raised the application of Article III(a) of the IAD to Petitioner's case. State law expressly disposed of the arguments raised in Petitioner's motions for discharge and to dismiss. The state trial court recognized that the language of the IAD indicated that the charges against Petitioner potentially should be discharged, but determined that the Florida Supreme Court had held otherwise. Furthermore, as noted *supra*, at the time Petitioner filed these motions, the United States Supreme Court had held that agreeing to a trial date beyond the 180-day period of Article III(a) constitutes a waiver of the defendant's IAD rights. *See New York v. Hill*, 528 U.S. 110, 110-11, 118 (2000). Thus, Petitioner has not established either deficient performance or prejudice pursuant to *Strickland*.

**DONE AND ORDERED** at Orlando, Florida, this 19th day of June, 2008.

Copies to:
sc 6/19
Counsel of Record
Richard Martin

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE